**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

HOULIHAN CAPITAL, LLC,

      Plaintiff,

      v.

BRAND ENGAGEMENT NETWORK,
INC., formerly known as DHC ACQUISITION
CORP.,

      Defendant.

_____/

**Case No. _____**

**Judge _____**

<u>COMPLAINT</u>

1. Houlihan Capital, LLC ("**Houlihan**") brings this action to recover a long overdue contract balance of $110,000.00 from Brand Engagement Network, Inc., formerly known as DHC Acquisition Corp. ("**DHC**"), which represents the unpaid portion of Houlihan's professional fees and costs for its financial advisory and valuation services that resulted in the closing of a reverse merger where DHC Acquisition Corp. acquired Brand Engagement Network, and the resulting combined entity is Brand Engagement Network, Inc.

2. Although Houlihan has repeatedly demanded payment of this contract balance and attempted to resolve this matter without court intervention since sending its first invoice on March 28, 2024, no payment has been made on the balance. Instead, DHC stopped communicating with Houlihan completely after the closing of its merger enabled by Houlihan's fairness opinion.

3. Houlihan has no choice but to bring this action without further delay, and seeks an order entitling it to a judgment of $110,000.00, plus prejudgment interest, post-judgment interest, and its contractually-entitled attorneys' fees and costs incurred in bringing this action.

PARTIES

4.      Houlihan is a Nevada limited liability company with its primary office located in Chicago, Illinois.

5.      DHC Acquisition Corp. was a Cayman Islands exempted company that contracted with Houlihan in August 2023 for professional financial and valuation services related to an intended business combination.

6.      On or around March 14, 2024, DHC Acquisition Corp. closed a reverse merger in which it acquired Brand Engagement Network, Inc., a Wyoming corporation.

7.      The resulting combined and surviving entity also is named Brand Engagement Network, Inc., but is a Delaware corporation with its principal place of business in Jackson, Wyoming. This is the entity named as Defendant in this lawsuit and referred to herein as "DHC." This entity was formerly DHC Acquisition Corp., the Cayman Islands company referenced in paragraph 5, but domesticated and changed its name for purposes of the merger transaction.

JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship amongst the partes.

9.      This Court has personal jurisdiction over DHC because this lawsuit arises from DHC's contacts with this state – *i.e.*, its contract with and obligation to make payment to Houlihan, located in Illinois, and involves Houlihan's performance of services in Illinois.

10.     DHC also consented to litigation in Illinois when it expressly agreed in writing, as part of the agreement on which this lawsuit is based, that "the sole and exclusive venue for any

2

matters arising hereunder shall be the court of competent jurisdiction in Cook County, Illinois and agree[d] to waive any objections to such venue." *See* Agreement (Exh. A) at p. 7.

<u>FACTUAL ALLEGATIONS</u>

11. On August 4, 2023, Houlihan entered into an Engagement Agreement ("**Agreement**") with DHC, a true and correct copy of which is attached as **Exhibit A** (with sensitive bank account information redacted) .

12. The Agreement was executed for DHC by Chris Gaertner, who was the Chief Financial Officer and Co-Chief Executive Officer at the time.

13. Pursuant to the Agreement, Houlihan was required to evaluate DHC's contemplated acquisition of Brand Engagement Network, Inc. and render a written fairness opinion to the Board of Directors of DHC Acquisition Corp. (the "**Opinion**").

14. In consideration for Houlihan's services, DHC was contractually obligated to pay Houlihan a total professional fee of $200,000.00 plus expenses capped at $10,000.00.

15. The first $100,000.00 was due from DHC at the time of execution of the Agreement, and that sum was timely paid by DHC.

16. The remaining $100,000 was to be paid by DHC "upon delivery of the draft Opinion and [DHC's] filing of the S4."

17. In addition, DHC was required to pay Houlihan's expenses incurred in connection with the services, capped at $10,000 without prior written consent from DHC.

18. Houlihan fully performed every obligation it had under the Agreement on or before March 28, 2024.

19. Houlihan delivered the Opinion dated September 7, 2023, without objection from DHC, and Chris Gaertner expressed satisfaction with Houlihan's performance.

174772v1

20. DHC utilized the Opinion for its intended corporate purpose, including by using it as support in DHC's SEC From S-4 filing dated February 12, 2024 ("S-4," available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/1838163/000119312524032208/d566788ds4a.htm).

21. DHC attached the Opinion in full at Annex I to the S-4.

22. DHC also acknowledged the contractual fee and expenses still owed to Houlihan in its public S-4 filing:

> On July 19, 2023, DHC engaged Houlihan Capital, LLC ("Houlihan Capital") for the delivery of an opinion by Houlihan Capital to the DHC Board as to whether, as of the date of such opinion, the consideration to be issued or paid in the Business Combination is fair, from a financial point of view, to the shareholders of DHC other than the Sponsor. On August 4, 2023, DHC and Houlihan Capital entered into a letter agreement to formalize the engagement of Houlihan Capital by DHC. The engagement letter provided for a non-contingent fee of $200,000, of which $100,000 was paid upon execution of the engagement letter, and the remaining $100,000 will become payable upon the effectiveness of the Registration Statement. DHC also agreed to reimburse Houlihan Capital for its out-of-pocket expenses incurred in performing the services described in the engagement letter, including reasonable, documented, and accountable out-of-pocket expenses incurred up to $10,000.

S-4, at p. 109.

23. The SEC accepted the S-4 on February 15, 2024, with an "effectiveness date" of February 14, 2024, triggering the final $100,000.00 payment to Houlihan. *See* Notice of Effectiveness, available at:

https://www.sec.gov/Archives/edgar/data/1838163/999999999524000454/9999999995-24-000454-index.htm

24. The DHC reverse merger transaction with Brand Engagement Network, Inc. closed on or around March 14, 2024.

174772v1

25.     As stated by DHC in an SEC filing on March 13, 2024:

> Brand Engagement Network Inc. ("BEN"), an emerging provider of personalized customer engagement AI, today reported that it expects to close its previously announced business combination (the "Business Combination") with DHC Acquisition Corp. (Nasdaq: DHCA) tomorrow, Thursday March 14, 2024. DHC shareholders approved the transaction at DHC's extraordinary general meeting held on March 5, 2024. The combined company will be named Brand Engagement Network and expects to begin trading on the Nasdaq Stock Market on Friday, March 15, 2024, under the ticker symbol "BNAI" for its common stock and "BNAIW" for its publicly traded warrants

https://www.sec.gov/Archives/edgar/data/1838163/000119312524067015/d805115d425.htm

26.     An SEC filing on March 20, 2024 confirmed that (i) prior to the closing, "DHC became a Delaware corporation named 'Brand Engagement Network Inc.,'" (ii) the merger was consummated on March 14, 2024, and (ii) the surviving "Company" is now "the entity formerly named DHC Acquisition Corp., after giving effect to the Business Combination (as defined below), and as renamed Brand Engagement Network Inc. ('Ben')."

https://www.sec.gov/Archives/edgar/data/1838163/000149315224010698/0001493152-24-010698-index.htm

27.     On March 28, 2024, Houlihan e-mailed its $110,000.00 invoice (the $100,000 balance triggered by the S-4 filing and expenses capped at $10,000) to DHC via 's Chief Financial Officer and Co-Chief Executive Officer at the time, Christopher Gaertner, and requested DHC to remit payment. *See* the "Invoice," a true and correct copy of which is attached as **Exhibit B**.

28.     No response was received to the Invoice.

29.     On June 4, 2024, Houlihan followed up with Mr. Gaertner via email with a payment reminder and request to remit payment. No response was received.

5

174772v1

30. On June 18, 2024, Houlihan once again followed up with Mr. Gaertner via email with a payment reminder and requested him to advise when payment would be remitted. No response was received.

31. On June 15, 2024, Houlihan emailed Mr. Gaertner requesting an update on when DHC would pay the invoice.

32. Mr. Gaertner responded to Houlihan the same day, stating only that he was "[l]ooping in Bill to provide clarity."

33. Mr. Gaertner added Bill Williams, the Chief Financial Officer of Brand Engagement Network, Inc. – the combined business entity that survived the merger – to the email chain. Neither Mr. Williams nor Mr. Gaertner ever responded further.

34. On April 22, 2025, Houlihan sent a final email to Mr. Gaertner and Mr. Williams, warning that failure to send the past-due payment would result in a collection action and requesting a reply via email with the expected payment date. No response was ever received.

35. A subsequent June 25, 2025 demand letter from Houlihan's outside counsel, served on Brand Engagement Network, Inc.'s registered agent, similarly remains unanswered.

36. DHC (now operating as Brand Engagement Network Inc., a Delaware corporation, following the closing of the 2024 reverse merger) remains responsible for any contract liabilities accrued or incurred prior to the closing of its merger, including the $110,000.00 Agreement balance as reflected in the Invoice (the "**Balance**").

37. Houlihan is further entitled to its reasonable attorneys' fees and costs incurred in bringing this action, pursuant to the Agreement. *See* Agreement at p. 7.

174772v1

38.     Houlihan has engaged Actuate Law to bring this action and is obligated to pay a reasonable fee in exchange for those legal services, as well as reimburse costs associated with this action.

**COUNT I – BREACH OF CONTRACT**

39.     Houlihan realleges the facts set forth in paragraphs 1 through 38 above, and fully incorporates those allegations by reference in this Count I.

40.     Houlihan and DHC entered into the valid and enforceable Agreement on August 4, 2023.

41.     The Agreement required DHC to pay Houlihan a $200,000.00 professional fee, plus costs capped at $10,000.

42.     DHC paid the first $100,000 portion of the professional fee when due.

43.     As of the date of this filing, DHC has failed to pay the second $100,000 portion of the professional fee, which was due upon the SEC accepting DHC's Form S-4 as effective – *i.e.*, on February 15, 2024.

44.     Houlihan sent an Invoice for the second $100,000 portion of the professional fee and its costs (capped at $10,000) on March 28, 2024, following the closing of the merger.

45.     The full $110,000 Balance was due and payable to Houlihan immediately upon receipt by DHC, who started operating as Brand Engagement Network, Inc., a Delaware corporation, following the merger.

46.     At all times, Houlihan has performed its duties pursuant to the Agreement.

47.     DHC has failed to pay the Balance owed under the Agreement.

48.     DHC has materially breached its Agreement duties by failing to pay the Balance.

7

49. As a direct result of DHC's material breach of the Agreement, Houlihan has been damaged in the amount of $110,000.00.

50. Houlihan is entitled to statutory pre-judgment interest on the Balance up until the date of judgment.

51. Houlihan is entitled to post-judgment interest starting on the date of entry of judgment up through the date of final payment on the judgment.

52. Houlihan is entitled to its attorneys' fees and costs incurred in bringing this action, as stated on page 7 of the Agreement.

WHEREFORE, Houlihan prays for judgment against Brand Engagement Network, Inc. in the amount of $110,000.00, plus prejudgment interest, costs, post-judgment interest, and attorneys' fees and costs, and such other relief as the Court deems just and proper.

Dated: October 13, 2025

Respectfully submitted,

By: */s/* Dara C. Tarkowski
ACTUATE LAW, LLC
Dara C. Tarkowski, Esq.
Andrea C. Halverson, Esq.
641 West Lake Street, 5th Floor
Chicago, Illinois 60661
312-579-3135
dara.tarkowski@actuatelaw.com
andrea.halverson@actuatelaw.com

*Attorneys for Houlihan Capital, LLC*

174772v1