# EXHIBIT A



**VALUATION & FINANCIAL ADVISORY | INVESTMENT BANKING | LITIGATION SUPPORT**

August 4, 2023 <span style="color:red">**PRIVATE & CONFIDENTIAL**</span>

Board of Directors
DHC Acquisition Corp.
535 Silicon Drive, Suite 100
Southlake, Texas 76092

Ladies and gentlemen:

We understand that DHC Acquisition Corp. and its affiliates, (collectively, the "Client" or "Company"), intends to enter into a business combination with Brand Engagement Network Inc. and its affiliates (the "Target Acquisition") whereby the total pre-money enterprise value of the Target Acquisition will be approximately [$250 million] following completion of the contemplated DeSPAC transaction (collectively, the "Transaction").

This letter, inclusive of Exhibit A annexed hereto (this "Agreement) confirms our agreement concerning the engagement of Houlihan Capital, LLC ("Houlihan Capital") to render a written opinion ("Opinion"), whether or not favorable, to the Board of Directors of the Company as to whether, as of the date of such Opinion, that the consideration to be issued or paid in the Transaction is fair from a financial point of view to the stockholders of the Company.

Our Opinion shall be in such form and substance customary to transactions of a similar nature and shall be rendered on a basis that is consistent with our professional responsibilities to the Client and shall be subject to the undertaking of certain inquiries concerning the Transaction and the business and assets of the Target Acquisition. In connection therewith, Houlihan Capital shall be entitled to rely upon all public and non-public reports of the Company and information supplied to it by or on behalf of the Company, and Houlihan Capital shall not in any respect be responsible for the accuracy or completeness of any such report or information or for any obligation to verify the same.

Our written opinion shall be used only (i) by the Board of Directors in evaluating the Transaction, (ii) in disclosure materials to holders of the common stock, (iii) in filings with the SEC (including the filing of the fairness opinion and the data and analysis presented by Houlihan Capital to the Board of directors, and (iv) in any litigation pertaining to matters relating to the Transaction and covered in the opinion. Our opinion will be provided to the Board of Directors as of the effective date of the Transaction and we will not be required to update our opinion as of a later date.

However, any submission of our Opinion or any portion thereof to the Securities and Exchange Commission or its staff, or any written or verbal references to Houlihan Capital, Houlihan Capital's Opinion or to the Services in any response to any comment letter issued by the Securities and Exchange Commission or its staff, is subject to Client, unless prohibited by Legal Process, providing Houlihan Capital with prior notice, and allowing Houlihan Capital a reasonable

DHC Acquisition Corp.
Engagement Letter
August 4, 2023

PRIVATE & CONFIDENTIAL

opportunity to provide input as to the content of such response. Client may not, other than as detailed above, reference the existence of or summarize or refer to the analyses or findings described in the Opinion, without the prior approval of Houlihan Capital (not to be unreasonably withheld, conditioned, or delayed).

Our fee for evaluating the Transaction and rendering an opinion as to its fairness will be $200,000 of which, $100,000 shall be forwarded upon execution of this Agreement and the remaining $100,000 shall be forwarded upon delivery of the draft Opinion and the Company's filing of the S4. In addition, Houlihan Capital shall be reimbursed for all reasonable, documented, and accountable out-of-pocket expenses incurred, including reasonable travel expenses and database searches some of which will be allocated, whether or not the Transaction is consummated. Out-of-pocket expenses shall not exceed $10,000 without the prior written consent of the Client.

The Company will make available and will use its reasonable best efforts to cause other parties to make available to us all information concerning the Transaction, including business, assets, operations, financial condition, and other information that is reasonably requested and available. In addition, the Client shall make available, and will use its reasonable best efforts to cause other parties to make available its officers, directors, professionals, and outside consultants as reasonably requested by us. The Client understands and agrees that delays in providing data or information may result in a delay in the completion of our Opinion.

Recognizing that transactions of this nature sometimes result in litigation and that the role of Houlihan Capital is limited to acting solely pursuant to this engagement, the Company and Houlihan Capital agree to the indemnification, contribution and reimbursement provisions set forth in Exhibit A attached hereto and incorporated herein by reference. In the event a principal of Houlihan Capital is required to testify in connection with the Transaction, an hourly fee of $850.00 shall be payable by the Company to Houlihan Capital for the time required of such principal, including testimony, preparation and any other time required in connection with such testimony.

Houlihan Capital's services hereunder may be terminated by the Board of Directors without liability or continuing obligation except with respect to the provisions set forth in Exhibit A. If Houlihan Capital's services are terminated prior to completion, other than for non-performance, Houlihan Capital shall be entitled to fees (in excess of the $100,000 retainer), if any, representative of the work actually performed, such fees to be mutually agreed-upon by Houlihan Capital and Client. For the avoidance of doubt, if Houlihan Capital in its judgment has substantially completed its work, Houlihan Capital will be entitled to receive and retain the balance of fees due as if the assignment contemplated herein was completed. If this paragraph is invoked, Houlihan Capital will provide to Client a written summary of the work performed through the termination date as a basis for the fees to which it is entitled.

With respect to any opinion delivered prior to the completion of the Transaction, it is understood that we may, at any time, reconsider our Opinion upon review of any new or modified report, document, release, or communication published or filed on behalf of the Company in connection with the Transaction, or otherwise received by us, after the date of delivery of the oral or written Opinion, as applicable.

The Company will be responsible for any liabilities and obligations to Houlihan Capital required pursuant to this engagement, including those arising pursuant to Exhibit A. Notwithstanding the foregoing, the Board of Directors shall have sole authority to direct Houlihan Capital's activities

DHC Acquisition Corp.
Engagement Letter
August 4, 2023

PRIVATE & CONFIDENTIAL

hereunder and shall be Houlihan Capital's client for purposes of this engagement. The Opinion to be delivered by Houlihan Capital shall be addressed to the Board of Directors as a whole, and the Board of Directors and the Client shall be entitled to rely on such Opinion.

Houlihan Capital has read the Company's prospectus, dated _____ 202_, and filed with the SEC (File Nos. _____) (the "Prospectus"), and understands as described in the Prospectus that the Company has established a segregated trust account (the "Trust Account") containing the proceeds of its initial public offering (the "Trust Funds"), for the benefit of the underwriter of the initial public offering and the public shareholders (including overallotment shares acquired by the underwriter of the initial public offering) Houlihan Capital hereby agrees that it does not have any right, title, interest or claim of any Trust Funds, including without limitation any claim for indemnification ("Claim") with respect to this Agreement and hereby waives any Claim it may have in the future as a result of, or arising out of, any negotiations, contracts or agreements amongst Houlihan Capital and the Company with respect to this Agreement and will not seek recourse against the Trust Funds for any reason whatsoever with respect to this Agreement; provided, however, that (x) nothing herein shall serve to limit or prohibit the right of Houlihan Capital to pursue a claim against the Company pursuant to this Agreement for legal relief against monies or assets of the Company other than the Trust Funds or for specific performance or other equitable relief as provided in this Agreement, and (y) nothing herein shall serve to limit or prohibit any claims that Houlihan Capital may have in the future pursuant to this Agreement against the Company's assets or funds other than the Trust Funds. Houlihan Capital agrees and acknowledges that such irrevocable waiver is material to this Agreement and specifically relied upon by the Company to induce it to enter into this Agreement, and Houlihan Capital further intends and understands such waiver to be valid, binding, and enforceable under applicable law. To the extent Houlihan Capital commences any action or proceeding arising out of or relating to this Agreement, which proceeding seeks, in whole or in part, monetary relief against the Company, Houlihan Capital hereby acknowledges and agrees its sole remedy shall be against funds held outside of the Trust Account and that such claim shall not permit Houlihan Capital (or any party claiming on Houlihan Capital's behalf or in lieu of Houlihan Capital) to have any claim against the Trust Account or any amounts contained therein.

[SIGNATURE PAGE FOLLOWS]

DHC Acquisition Corp.                            <span style="color:red">PRIVATE & CONFIDENTIAL</span>
Engagement Letter
August 4, 2023

In accordance with Houlihan Capital policy, it is necessary that we receive an executed copy of this Agreement and the attached Exhibit A (to which this Agreement is subject) prior to commencement of the services. If the scope and terms of the Agreement and the attached Exhibit A are acceptable, please acknowledge your acceptance by signing the confirmation below and returning this Agreement to us along with a wire transfer (instructions attached) in the amount of $100,000 payable to Houlihan Capital, LLC.

Houlihan Capital, LLC

*Andrew D. Smith*

_____          Date:   August 4, 2023

Signed:          Andrew D. Smith
Position:        President
On behalf of:  Houlihan Capital, LLC

**Confirmation of Terms of Engagement**

Having read this Agreement from Houlihan Capital, LLC and the attached Exhibit A, we acknowledge acceptance of and agree to engage Houlihan Capital, LLC in accordance with the terms and provisions of this Agreement and the attached Exhibit A.

*Chris Gaerther*
Chris Gaerther (Aug 4, 2023 13:41 CDT)
_____          Date: August 4, 2023
Signed:
Position:
On behalf of: DHC Acquisition Corp.

DHC Acquisition Corp.
Engagement Letter
August 4, 2023

PRIVATE & CONFIDENTIAL

## EXHIBIT A

**Representations of the Company.** The Company intends to furnish (and to use reasonable efforts to cause other potential parties to a Transaction to furnish) Houlihan Capital such information as Houlihan Capital reasonably requests in connection with the performance of its services hereunder; provided that under no circumstances shall the Company or any of its officers, directors or affiliates have any liability to Houlihan Capital under this sentence. The Company hereby represents and warrants that any and all information supplied hereunder to Houlihan Capital relating to the Company in connection with any and all services to be performed hereunder by Houlihan Capital for and on behalf of the Company shall be, to the best of the Company's knowledge, true, complete and correct as of the date of such dissemination and shall not fail to state a material fact necessary to make any of such information not misleading. The Company hereby acknowledges that the ability of Houlihan Capital to adequately provide services as described herein is dependent upon the prompt dissemination of accurate, correct, and complete information to Houlihan Capital. The Company further represents and warrants hereunder that this Agreement and the transactions contemplated hereunder have been duly and validly authorized by all requisite corporate action; that the Company has the full right, power and capacity to execute, deliver and perform its obligations hereunder; and that this Agreement, upon execution and delivery of the same by the Company, will represent the valid and binding obligation of the Company enforceable in accordance with its terms. The representations and warranties set forth herein shall survive the termination of this Agreement.

**Indemnification.** The Company hereby agrees to indemnify and hold Houlihan Capital, its officers, directors, principals, employees, affiliates, and members, and their successors and assigns, harmless from and against any and all loss, claim, damage, liability, deficiencies, actions, suits, proceedings, reasonable costs and reasonable legal expenses (collectively the "Losses") or other reasonable expense whatsoever (including, but not limited to, reasonable legal fees and other reasonable expenses and reasonable disbursements incurred in connection with investigating, preparing to defend or defending any action, suit or proceeding, including any inquiry or investigation, commenced or threatened, or any claim whatsoever, or in appearing or preparing for appearance as witness in any proceeding, including any pretrial proceeding such as a deposition) arising out of, based upon, or in any way related or attributed to, (i) any breach of a representation, or warranty by the Company contained in the attached Agreement; or (ii) any activities or services performed hereunder by Houlihan Capital, except to the extent such Losses were the result of the intentional misconduct or gross negligence of Houlihan Capital ("Excluded Losses"). Houlihan Capital agrees to pay to the Company any amounts that the Company has previously paid or advanced to an indemnified party pursuant to this Exhibit A in respect of which such indemnified party is ultimately found not to be entitled pursuant to the proviso of the foregoing sentence.

If Houlihan Capital receives written notice of the commencement of any legal action, suit or proceeding with respect to which the Company is or may be obligated to provide indemnification pursuant to this Paragraph, Houlihan Capital shall, within thirty (30) days of the receipt of such written notice, give the Company written notice thereof (a "Claim Notice"). Failure to give such Claim Notice within such thirty (30) day period shall not constitute a waiver by Houlihan Capital of its right to indemnity hereunder with respect to such action, suit or proceeding unless such failure prejudices the Company in its defense of such claim. Upon receipt by the Company of a Claim Notice from Houlihan Capital with respect to any claim for indemnification which is based upon a claim made by a third party ("Third Party Claim"), the Company may assume the defense of the Third-Party Claim with counsel of its own choosing, as described below.

DHC Acquisition Corp.  PRIVATE & CONFIDENTIAL
Engagement Letter
August 4, 2023

Houlihan Capital shall cooperate in the defense of the Third-Party Claim and shall furnish such records, information and testimony and attend all such conferences, discovery proceedings, hearings, trial and appeals as may be reasonably required in connection therewith. Houlihan Capital shall have the right to employ its own counsel in any such action at its own cost. The Company shall not satisfy or settle any Third-Party Claim for which indemnification has been sought and is available hereunder, without the prior written consent of Houlihan Capital, which consent shall not be unreasonably withheld or delayed and which shall not be required if Houlihan Capital is granted a release in connection therewith. The indemnification provisions hereunder shall survive the termination of the attached Agreement.

The Company further agrees, upon demand by Houlihan Capital, to promptly reimburse Houlihan Capital for, or pay, any Loss for which Houlihan Capital is entitled to indemnification herein with such reimbursement to be made currently as any Loss, is incurred by Houlihan Capital. Notwithstanding the provisions of the aforementioned indemnification, any such reimbursement or payment by the Company of fees, expenses, or disbursements incurred by Houlihan Capital shall be repaid by Houlihan Capital in the event of any proceeding in which a final judgment (after all appeals or the expiration of time to appeal) is entered against Houlihan Capital based upon its gross negligence or intentional misconduct in the performance of its duties hereunder, and provided further, that the Company shall not be required to make reimbursement or payment for any settlement effected without the Company's prior written consent (which consent shall not be unreasonably withheld).

If for any reason the foregoing indemnification is held unenforceable, the Company agrees to contribute the amount paid or payable by such indemnified party as of result of such Losses (other than Excluded Losses) in such proportion as to reflect not only the relative benefits received by the Company, as the case may be, on the one hand, and Houlihan Capital, on the other hand; provided that the Company shall take into account the relative fault of the Company and Houlihan Capital as well as any relevant equitable considerations.

For purposes of this Agreement, each officer, director, member, and employee or affiliate of Houlihan Capital and each person, if any, who controls Houlihan Capital (or any affiliate) within the meaning of either Section 15 of the Securities Act of 1933, as amended or Section 20 of the Securities Exchange Act of 1934 shall have the same rights as Houlihan Capital with respect to matters of indemnification by the Company hereunder.

**Confidentiality.** Concurrent with the execution of this Agreement, Houlihan Capital has entered into a Confidentiality and Non-Disclosure Agreement with Company with respect to confidential, proprietary, and non-public information of the Company. Houlihan Capital agrees to be bound by the provisions of such agreement.

**Amendment.** No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is evidenced by a written instrument, executed by the party against which such modification, waiver, amendment, discharge, or change is sought.

**Notices.** All notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given when delivered in person or transmitted by facsimile transmission or on the third calendar day after being mailed by United States registered or certified mail, return receipt requested, postage prepaid, to the addresses herein above first mentioned or to such other address as any party hereto shall designate to the other for such purpose in the manner hereinafter set forth.

DHC Acquisition Corp.                                      PRIVATE & CONFIDENTIAL
Engagement Letter
August 4, 2023

**Entire Agreement.** This Agreement contains all of the understandings and agreements of the parties with respect to the subject matter discussed herein. All prior agreements, whether written or oral, are merged herein and shall be of no force or effect.

**Severability.** The invalidity, illegality or unenforceability of any provision or provisions of this Agreement will not affect any other provision of this Agreement, which will remain in full force and effect, nor will the invalidity, illegality, or unenforceability of a portion of any provision of this Agreement affect the balance of such provision. In the event that any one or more of the provisions contained in this Agreement or any portion thereof shall for any reason be held to be invalid, illegal, or unenforceable in any respect, this Agreement shall be reformed, construed, and enforced as if such invalid, illegal, or unenforceable provision had never been contained herein.

**Construction; Venue.** This agreement shall be governed by and construed in accordance with the laws of the State of Illinois. The Company agrees that the sole and exclusive venue for any matters arising hereunder shall be the court of competent jurisdiction in Cook County, Illinois and agrees to waive any objections to such venue.

**Binding Nature.** The terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties, and their respective successors and assigns.

**Counterparts.** This Agreement may be executed in any number of counterparts, including facsimile signatures, which shall be deemed as original signatures. All executed counterparts shall constitute one Agreement, notwithstanding that all signatories are not signatories to the original or the same counterpart.

**Attorneys' Fees and Court Costs.** If any party to this Agreement brings an action, directly or indirectly based upon this Agreement or the matters contemplated hereby against the other party, the prevailing party shall be entitled to recover, in addition to any other appropriate amounts, its reasonable costs and expenses in connection with such proceeding, including, but not limited to, reasonable attorneys' fees and court costs.

**Information Disclosure.** Houlihan Capital may disclose any information where disclosure is required by law.

**Legal Services.** While certain principals of Houlihan Capital are attorneys, Houlihan Capital is not, in any manner, providing legal services or legal advice to the Company.

**Marketing.** Houlihan Capital shall have the ability to publicize (i.e., use of the Company's logo in its marketing materials) its role in providing the Company with the services noted herein following closing of the Transaction; provided that the Company shall be entitled to review and approve any materials referring to the Company, which approval may not be unreasonably withheld.

DHC Acquisition Corp.
Engagement Letter
August 4, 2023

PRIVATE & CONFIDENTIAL

## Houlihan Capital, LLC Wire Transfer Instructions:

Wire Funds to:                    REDACTED


ABA Routing Number:          REDACTED
Account Number:                REDACTED
Account Name:                   Houlihan Capital, LLC

# ADOBE SIGN --> Engagement Letter - Fairness Opinion - DHC SPAC - Houlihan Capital DRAFT

Final Audit Report                                                    2023-08-04

| | |
|---|---|
| Created: | 2023-08-04 |
| By: | Andrew Smith (asmith@houlihancapital.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAbAO4xMLy3GY2wLJD3KWixv3lQPiCnD_8 |

## "ADOBE SIGN --> Engagement Letter - Fairness Opinion - DHC SPAC - Houlihan Capital DRAFT" History

Document created by Andrew Smith (asmith@houlihancapital.com)
2023-08-04 - 4:59:22 PM GMT

Document emailed to chris@integrity.partners for signature
2023-08-04 - 5:01:01 PM GMT

Email viewed by chris@integrity.partners
2023-08-04 - 6:40:19 PM GMT

Signer chris@integrity.partners entered name at signing as Chris Gaertner
2023-08-04 - 6:41:45 PM GMT

Document e-signed by Chris Gaertner (chris@integrity.partners)
Signature Date: 2023-08-04 - 6:41:47 PM GMT - Time Source: server

Agreement completed.
2023-08-04 - 6:41:47 PM GMT

**Adobe Acrobat Sign**